UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.

ANGELA DANGERFIELD,

    Plaintiff,

v.

HOBE SOUND OPCO, LLC
d/b/a The Terrace at Hobe Sound,

    Defendant.

_____/

## COMPLAINT

Plaintiff Angela Dangerfield ("Dangerfield") sues Defendant Hobe Sound OpCo, LLC d/b/a The Terrace at Hobe Sound ("Hobe Sound"), and alleges the following:

## PARTIES

1. Ms. Dangerfield currently is a resident of Shreveport, Louisiana. Between May 1, 2020, and August 15, 2020, Ms. Dangerfield had been a resident of Martin County, Florida.

2. Hobe Sound is a Florida for-profit limited liability company with its principal place of business in Hobe Sound, Martin County, Florida.

## JURISDICTION AND VENUE

3. This Court has original jurisdiction as the claims are brought pursuant to the Emergency Paid Sick Leave Act ("EPSLA") and the Emergency Family and Medical Leave Expansion Act ("E-FMLA").

4. This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1337.

5. This Court has personal jurisdiction because, among other things, Hobe Sound has operated, conducted, engaged in, or carried on a business or business venture in Florida, and Hobe Sound has engaged in substantial and not isolated activity within Florida. *See generally* Fla. Stat. § 48.193.

6. Pursuant to 28 U.S.C. § 1391 and 28 U.S.C. § 89(c), venue is proper in this Court because Hobe Sound resides in Florida, Hobe Sound resides in the Southern District of Florida, and a substantial part of the events or omissions giving rise to the claims occurred in the Southern District of Florida. The Fort Pierce Division is the proper division within the Southern District of Florida for this action.

7. All conditions precedent have occurred or been performed.

## **GENERAL ALLEGATIONS**

8. Hobe Sound hired Ms. Dangerfield in September 2019.

9. Hobe Sound hired Ms. Dangerfield as a housekeeper.

10. On March 1, 2020, the Governor of the State of Florida issued Executive Order 20-51 directing the Florida Department of Health to issue a public health emergency. On that same day, Florida's State Surgeon General and State Health Officer declared a public health emergency existed in the State of Florida as a result of COVID-19. That public health emergency remained in effect between March 1, 2020, and August 15, 2020.

11. On March 9, 2020, the Governor of the State of Florida issued Executive Order 20-52 declaring a state of emergency for the State of Florida as a result of COVID-19. That state of emergency remained in effect between March 9, 2020, and August 15, 2020.

12. Like the State of Florida, on March 13, 2020, the President of the United States issued Proclamation 9994, declaring that the COVID-19 outbreak in the United States constituted a national emergency.

13. Like the State of Florida and like the President of the United States, on March 16, 2020, Martin County, Florida, declared a local state of local emergency as a result of COVID-19.

14. The Governor of the State of Florida further declared by Executive Order 20-51, that the Florida Department of Health issue guidance consistent with U.S. Centers for Disease Control's mitigation measure guidelines, which included, among other mitigation measures, that individuals that have been exposed to, are experiencing symptoms of, or tested positive for COVID-19 isolate or quarantine for a period of fourteen days or until the person tests negative for COVID-19.

15. In connection with having declared a state of emergency and public health emergency, the Governor of the State of Florida subsequently issued Executive Order 20-82, which required that all persons entering the State of Florida isolate or quarantine for a period of fourteen days from the time of entry into the State of Florida.

16. On or about May 25, 2020, Ms. Dangerfield tested positive for COVID-19. Ms. Dangerfield unfortunately contracted COVID-19 as a result of being exposed at Hobe Sound.

17. As a result of contracting COVID-19, Ms. Dangerfield was out of work for five weeks. During this time, Ms. Dangerfield took a leave of absence under the EPSLA and the E-FMLA.

18. Notably, Ms. Dangerfield's supervisor (Jamie) threatened Ms. Dangerfield's job during this legally protected leave of absence  Jamie called

Ms. Dangerfield, telling her that Hobe Sound was going to stop paying her because she had been out of work for too long. Jamie told Ms. Dangerfield to come to Hobe Sound to get re-tested. Ms. Dangerfield called the local health department to get assistance. She was told that there was no reason to get re-tested at that point because the result would only come back positive. She also was told that she should not go in to work because she was under a requirement to isolate. Ms. Dangerfield followed the instructions of the health department, but because of the threat to her job, she ended up coming back to work at a later point—albeit still weak from her recovery from COVID-19.

19. In early July, Ms. Dangerfield was able to return to work.

20. Approximately one week after returning to work, on July 11, 2020, Ms. Dangerfield's husband died.

21. Ms. Dangerfield requested time off so she could attend her husband's funeral, which was to take place out-of-state. Ms. Dangerfield's supervisor (Jamie) approved the request for time off. Jamie did state that Ms. Dangerfield must call him when she was able to return to work.

22. On August 3, 2020, Ms. Dangerfield notified Jamie she had returned to Florida. Jamie however did not allow Ms. Dangerfield to return to work. Rather, Jamie stated that Ms. Dangerfield would not be allowed to return to work until she (1) quarantined at home for fourteen days and (2) got tested for COVID-19. Jamie further stated, "[a]lso remember when you get it you must call me before coming to work."

23. On or about August 5, 2020, Ms. Dangerfield got tested for COVID-19. The testing facility notified Ms. Dangerfield that it could take five-to-seven days, and perhaps up to ten days, to get the results.

24. On August 14, 2020, Ms. Dangerfield notified Jamie by text that she got her COVID-19 test results and that she was negative. Jamie responded by text that he would call Ms. Dangerfield later that day.

25. Jamie did call Ms. Dangerfield later that day. Jamie told Ms. Dangerfield she has been fired—telling her she had been replaced and the reason she had been replaced was because she missed too many days.

26. The only days that Ms. Dangerfield missed, other than her fully approved unpaid bereavement leave to mourn the passing of her husband, were all directly related to COVID-19.

27. Ms. Dangerfield has retained the undersigned law firm to represent her in the litigation and has agreed to pay the firm a reasonable fee for its services. A consent to sue for Ms. Dangerfield is attached as Exhibit 1.

## COUNT I:
## VIOLATION OF THE
## EMERGENCY FAMILY AND MEDICAL LEAVE EXPANSION ACT

28. Ms. Dangerfield restates and realleges paragraphs 1 through 27 as if fully set forth herein.

29. Ms. Dangerfield was an eligible employee as defined by the E-FMLA. Ms. Dangerfield had been employed for at least thirty calendar days by an employer, that was Hobe Sound.

30. Hobe Sound was an employer as defined by the E-FMLA. Hobe Sound had fewer than 500 employees.

31. Ms. Dangerfield had a qualifying need for leave related to a public health emergency.

  a. As stated above, federal, state, and local authorities all declared a state of emergency, with Florida specifically also declaring a public health emergency, as a result of COVID-19.

  b. The qualifying need was the result of being unable to work, and unable to telework, for two reasons. First, the Governor of the State of Florida issued an Executive Order mandating Ms. Dangerfield quarantining for fourteen days because she had been traveling back to the State of Florida. Second, Hobe Sound mandated that Ms. Dangerfield quarantine for fourteen days and not return to work until she had a negative COVID-19 test result.

32. Hobe Sound interfered with or otherwise denied Ms. Dangerfield E-FMLA benefits to which she was entitled under the E-FMLA. This occurred in at least two ways.

  a. As a result of having a qualified need for leave, the E-FMLA required Hobe Sound to provide paid leave for each day of leave that Ms. Dangerfield took. The amount to be paid had to be (a) not less than two-thirds of Ms. Dangerfield's regular rate of pay and (b) the number of hours Ms. Dangerfield would otherwise be normally scheduled to work. Hobe Sound violated the E-FMLA by failing to pay Ms. Dangerfield the required wages during the period of time it (and executive order) required that she quarantine given her travel back to Florida in early August 2020.

  b. As a result of having a qualified need for leave, the E-FMLA also required Hobe Sound to restore Ms. Dangerfield to a position equivalent to the position she held when the leave commenced, with equivalent employment benefits, pay, and other terms and conditions of employment. Hobe Sound violated the E-FMLA by failing to restore Ms. Dangerfield. Rather, Ms. Dangerfield was told she had been replaced because she missed too many days—days she missed because of COVID-19.

33. Due to the willful and unlawful acts of Hobe Sound, Ms. Dangerfield suffered and continues to suffer damages.

WHEREFORE, Ms. Dangerfield respectfully requests that judgment be entered in her favor and against Hobe Sound: (a) awarding Ms. Dangerfield wages, salary, employment benefits, or other compensation, including interest of such amounts as allowed by 29 U.S.C. § 2617(a)(1)(A)(ii); (b) awarding Ms. Dangerfield liquidated damages in an amount equal to the sum of wages, salary, employment benefits, or other compensation, including interest on such amount as allowed by 29 U.S.C. § 2617(a)(1)(A)(iii); (c) awarding Ms. Dangerfield reasonable attorneys' fees, reasonable expert witness fees, and other costs and expenses pursuant to 29 U.S.C. § 2617(a)(3), 28 U.S.C. § 1920, and Fed. R. Civ. P. 54; (d) awarding post-judgment interest; and (e) ordering such other and further relief as the circumstances and law require and/or provide.

## COUNT II:
## VIOLATION OF THE EMERGENCY PAID SICK LEAVE ACT

34. Ms. Dangerfield restates and realleges paragraphs 1 through 27 as if fully set forth herein.

35. The EPSLA makes it unlawful for an employer to discharge, discipline, or in any other manner discriminate against any employee who takes leave in accordance with the EPSLA.

36. Ms. Dangerfield was an employee as defined by the EPSLA. Within the meaning of § 206 and § 207 of the Fair Labor Standards Act, Ms. Dangerfield was "engaged in commerce," engaged in the "production of goods for commerce," and/or subject to the individual coverage of the Fair Labor Standards.

37. Hobe Sound was an employer as defined by the EPSLA. Hobe Sound had fewer than 500 employees. Within the meaning of § 206 and § 207 of the Fair Labor Standards Act, Hobe Sound was, and continue to be, an "enterprise engaged in commerce" and/or engaged in the "production of goods for commerce," and based upon information and belief, having annual gross revenue in excess of $500,000.00 per annum in 2019 and 2020.

38. In May 2020, Ms. Dangerfield contracted COVID-19 at Hobe Sound. As a result, Ms. Dangerfield took leave in accordance with the EPSLA because she (a) was experiencing symptoms of COVID-19 and sought a medical diagnosis, (b) then advised by a doctor (health care provider) to self-isolate due to concerns related to COVID-19, and (c) subject to a state or local quarantine or isolation order related to COVID-19.

39. Hobe Sound retaliated against Ms. Dangerfield because she took paid leave under the EPSLA. Specifically, Hobe Sound threatened Ms. Dangerfield's job and then later discharged (fired) Ms. Dangerfield stating she missed too many days of work.

40. Hobe Sound's retaliatory actions were casually related to Ms. Dangerfield taking EPSLA leave. This included specifically telling Ms. Dangerfield that she had missed too much work and then later telling her the reason that she was being let go was because she missed too many days of work. The days of work missed were those taken as a result of COVID-19.

41. Hobe Sound's actions were willful and/or showed reckless disregard for the provisions of the EPSLA.

42. Due to the intentional, willful, and unlawful acts of Hobe Sound, Ms. Dangerfield suffered and continues to suffer damages (including pain and suffering), plus liquidated damages.

WHEREFORE, Ms. Dangerfield respectfully requests that judgment be entered in her favor and against Hobe Sound:  (a) awarding Ms. Dangerfield compensatory damages; (b) awarding Ms. Dangerfield liquidated damages in an amount equal to the compensatory damages; (c) awarding Ms. Dangerfield reasonable attorneys' fees, costs, and other expenses pursuant to 29 U.S.C. § 216(b), 28 U.S.C. § 1920, and Fed. R. Civ. P. 54; (d) awarding Ms. Dangerfield pre-judgment interest (if liquidated damages are not awarded) and post-judgment interest and (e) ordering such other and further relief as the circumstances and law require and/or provide.

## DEMAND FOR TRIAL BY JURY

43.     Ms. Dangerfield demands a jury trial for all issues so triable.

Dated:  November 2, 2020

Respectfully submitted,

*/s/ Brian L. Lerner*
Brian L. Lerner (Fla. Bar No. 177202)
blerner@kvllaw.com
Kim Vaughan Lerner LLP
One Financial Plaza, Suite 2001
Fort Lauderdale, Florida 33394
Telephone:   (954) 527-1115
Facsimile:    (954) 527-1116
Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was served by service of process on Hobe Sound OpCo, LLC d/b/a The Terrace at Hobe Sound, c/o Incorp Services (as registered agent), 17888 67th Avenue, Loxahatchee, Florida 33470.

*/s/ Brian L. Lerner*
Brian L. Lerner
